**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **GARY HOBBS,** | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-16-749 |
| **SEAN ST. MARTIN,** | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

Gary Hobbs ("Plaintiff"), a citizen of Virginia, brought an action in diversity against Sean St. Martin ("Defendant"), a citizen of Maryland, alleging that Defendant wrongfully received and retained $500,000 that Plaintiff loaned to one Richard Hagen, a nonparty. Plaintiff brought claims for Money Had and Received (Count I), Unjust Enrichment (Count II), and Conversion (Count III). Now pending before the Court is Defendant's Motion to Dismiss or in the Alternative for Summary Judgment. (ECF No. 8.) The issues have been briefed (*see* ECF Nos. 9, 13 & 14), and no hearing is required, *see* Local Rule 105.6 (D. Md. 2014). For the reasons explained below, Defendant's motion will be construed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and will be GRANTED.

*I.   Summary of the Complaint[1]*

To read the allegations in Plaintiff's Complaint, one might be forgiven for thinking he has sued Richard Hagen. Plaintiff alleges that he knew Hagen for more than ten years and that, in or around 2003, Hagen approached him with a lucrative "business opportunity." (ECF No. 1

---

[1] The facts are recited here as alleged by Plaintiff, this being a motion to dismiss. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

¶¶ 6-7.) Evidently, Hagen held himself out as having "numerous contacts in the defense and intelligence communities"; through these contacts, he was poised to "accept private investments to invest in companies with ties to the Central Intelligence Agency." (*Id.* ¶ 7.) Plaintiff seemingly took Hagen at his word, and he invested $500,000 in the venture. (*Id.*) Years passed. In June 2014, Hagen again approached Plaintiff, this time seeking a $500,000 short-term loan, ostensibly to "buy out other investors who needed to cash out prematurely." (*Id.* ¶ 9.) Plaintiff agreed to withdraw the funds from his individual retirement account ("IRA") and extend the loan, provided that he would be repaid within a month. (*Id.* ¶¶ 10-11.) Plaintiff supplied Hagen with the name and contact information for his broker. (*Id.* ¶ 13.) Unbeknownst to Plaintiff, however, Hagen contacted the broker and arranged for the funds to be wired to Defendant's account at M&T Bank. (*Id.*) Hagen subsequently advised Plaintiff that Defendant was a "former 'black ops' operative and a high ranking official in the company who could facilitate the investment." (*Id.* ¶ 14.)

Later that year, Plaintiff learned that Hagen had been sued for fraud in state and federal court. (*Id.* ¶ 16.)[2] Thereafter, Plaintiff repeatedly demanded that Hagen return both the $500,000 initial investment and the $500,000 loan, but Hagen failed to do so. (*Id.* ¶ 17.) In November 2015, the Grand Jury for the District of Maryland charged Hagen with six counts of wire fraud in connection with operating a Ponzi-like investment scheme materially similar to the venture described in Plaintiff's Complaint, *see* Indictment, *United States v. Hagen*, Crim. No. RDB-15-585 (Nov. 10, 2015) (ECF No. 1). The charges were subsequently dismissed.[3]

---

[2] The Court suspects that Plaintiff brought the instant action against Defendant rather than Hagen because of these prior lawsuits, which have apparently resulted in multimillion dollar judgments against Hagen. It may well be that Hagen (or, more technically, his estate, *see infra*) is effectively judgment proof.

[3] As a matter of public record, the Indictment and related court filings are within the purview of the Court's analysis on a Rule 12(b)(6) motion. *See Grant v. Prince George's Cty. Dep't*, Civ. No. DKC 15-2433, 2016 WL 3541239, at *2 n.1 (D. Md. June 29, 2016); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004). Although newspaper articles generally do not fall within the ambit of this

2

Plaintiff alleges that, despite his demands, Defendant refused to return the $500,000 loan proceeds to him, instead using those proceeds "for his personal use and gain." (ECF No. 1 ¶¶ 18-19.) Plaintiff sued Defendant on March 14, 2016, seeking $750,000 in compensatory damages and another $750,000 in punitive damages. (ECF No. 1.) On May 2, 2016, Defendant moved to dismiss. (ECF No. 8.) Plaintiff filed a response in opposition (ECF No. 13), and Defendant replied (ECF No. 14). Defendant's motion is ripe for decision.

## II.  *Standard of Review*

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In analyzing a Rule 12(b)(6) motion, the Court views all well-pleaded allegations in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable . . . ." *Twombly*, 550 U.S. at 556. Even so, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

A motion such as Defendant's motion here, styled in the alternative as one for summary judgment, "implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure," *Sager v. Hous. Comm'n of Anne Arundel Cty.*, 855 F. Supp. 2d 524, 542 (D. Md. 2012). Rule 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the

---

public-records exception, *see Corbett v. Duerring*, 780 F. Supp. 2d 486, 494 n.3 (S.D. W. Va. 2011), the Court here notes—strictly for context and not for analytical purposes—that Hagen reportedly committed suicide shortly after the Indictment was returned against him (*see* ECF No. 9–1 at 22-24).

pleadings are presented to *and not excluded* by the court, the motion must be treated as one for summary judgment under Rule 56" (emphasis added), with all parties being given a reasonable opportunity to present pertinent material. However, a "district judge has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings . . . or to reject it or simply not consider it.'" *Sager*, 855 F. Supp. 2d at 542 (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 (3d ed. 2004)). In this case, Plaintiff has had no opportunity for discovery; what is more, he filed a declaration identifying the lines of inquiry he would pursue were discovery afforded to him (*see* ECF No. 13–1 at 5-6). Under these circumstances, it would be inappropriate for the Court to take notice of evidence beyond the allegations in the Complaint and information in the public record. Accordingly, the Court will disregard all extraneous submissions and related discussion in the briefs and will instead evaluate Plaintiff's Complaint pursuant to the familiar standards of Rule 12(b)(6).

*III.  Analysis*

    *A.   Counts I (Money Had and Received) and II (Unjust Enrichment)*

In Count I, Plaintiff alleges that "Defendant obtained $500,000 from Plaintiff to which he is not entitled and which he has no right to retain." (ECF No. 1 ¶ 23.) In Count II, Plaintiff similarly alleges that Defendant's continued retention of the $500,000 would "violate[] fundamental principles of justice, equity, and good conscience and would unjustly enrich Defendant at Plaintiff's expense." (*Id.* ¶ 32.) As both parties have acknowledged in their briefs, actions sounding in unjust enrichment and for money had and received are materially similar and analyzed pursuant to the same basic framework. *See Jennings v. Rapid Response Delivery, Inc.*, Civ. No. WDQ-11-0092, 2011 WL 2470483, at *6 (D. Md. June 16, 2011) ("Money had and received is analogous to an unjust enrichment or restitution claim." (citing *Benson v. State*, 887

A.2d 525, 547 (Md. 2005))).  To recover under either theory, the plaintiff must demonstrate that the defendant received a benefit which equity requires the defendant to relinquish.  A claim for unjust enrichment, in particular, comprises three elements:  (1) a "benefit conferred upon the defendant by the plaintiff"; (2) an "appreciation or knowledge by the defendant of the benefit"; and (3) the "acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007); *cf. Benson*, 887 A.2d at 547 ("The action for money had and received is a common count used to bring a restitution claim under the common law writ of assumpsit. . . . [T]his count 'lies whenever the defendant has obtained possession of money which, in equity and good conscience, he ought not to be allowed to retain.'" (citations omitted)).

      Significantly, the measure of recovery for these (and other) restitutionary actions is "the gain to the defendant, not the loss by the plaintiff." *Mass Transit Admin. v. Granite Constr. Co.*, 471 A.2d 1121, 1126 (Md. Ct. Spec. App. 1984); *see also* Restatement (First) of Restitution § 150 (Am. Law Inst. 1937) ("In an action of restitution in which the benefit received was money, the measure of recovery for this benefit is the amount of money received.").  Moreover, while scienter is not an element of these restitutionary actions, and while an innocent recipient enriched by third-party wrongdoing might nevertheless be held to account under certain circumstances, "the primary rule is that if repayment will cause the recipient loss, restitution is barred to the extent that such loss would occur." *Bank of Am. Corp. v. Gibbons*, 918 A.2d 565, 577 (Md. Ct. Spec. App. 2007) (citation omitted); *see also Plitt v. Greenberg*, 219 A.2d 237, 364 (Md. 1966) ("It has been held that a plaintiff could recover money from even an innocent transferee who was without knowledge that he possessed the plaintiff's money.  However, if a

5

transferee came into possession of a plaintiff's money *in good faith after paying a good and valuable consideration for it*, then the plaintiff could not prevail and recover . . . the funds in that transferee's possession." (emphasis added) (citations omitted)).

In his memorandum accompanying his Motion to Dismiss, Defendant observes that it is "not alleged that [he] had anything to do with [the $500,000 loan] transaction or had knowledge of any of the fraudulent misrepresentations made by Hagen to Hobbs," nor is he alleged to have "failed to have paid consideration for the funds received from Hobbs on account of the loan to Hagen." (ECF No. 9 at 12.)  The Court agrees:  Plaintiff devotes most of the factual allegations in his Complaint to Hagen, barely mentioning Defendant at all.  After paring back Plaintiff's legal labels and conclusions, which are entitled to no deference even at the Rule 12(b)(6) stage, *see Monroe v. City of Charlottesville*, 579 F.3d 380, 385-86 (4th Cir. 2009), the most the Court can gather is that (1) the $500,000 loan proceeds were wired into Defendant's M&T Bank account; (2) Hagen held Defendant out as a former "black ops" operative and a high-ranking company official; and (3) upon demand, Defendant refused to return the proceeds to Plaintiff but instead used them for his "personal use and gain." (ECF No. 1 at 4.)  Absent are any allegations concerning the circumstances under which Defendant received the wire transmission:  the Court can only speculate as to whether Defendant gave good and valuable consideration for the funds; whether Defendant was Hagen's creditor or donee; and whether Defendant was involved with Hagen's apparent Ponzi scheme, ignorant of the scheme, or perhaps himself a victim of the scheme.  Yet such information is essential to the Court's determination as to the legal viability of Plaintiff's restitutionary theories.  This is so because the "mere fact that a person benefits another is not of itself sufficient to require the other to make restitution," and while "'a person is enriched if he has received a benefit,' the law does not consider him *unjustly enriched* unless 'the

6

circumstances of the receipt of the benefit are such as between the two that to retain it would be unjust.'" *First Nat'l Bank of Md. v. Shpritz*, 493 A.2d 410, 419 (Md. Ct. Spec. App. 1985) (citation omitted). For this reason, a "claim for unjust enrichment requires an allegation that the defendant was not a *bona fide* purchaser." *Haley v. Corcoran*, 659 F. Supp. 2d 714, 724 (D. Md. 2009). Plaintiff makes no such factual allegation here.[4]

Assuming purely for the sake of this discussion that Defendant *did* provide legally sufficient consideration for the loan proceeds, such consideration would not necessarily exonerate him. After all, if he played a role in Hagen's scheme (or was at least aware of the scheme), his bad faith might very well justify disgorgement of the funds he obtained thereby. And in fact, in his opposition brief Plaintiff posits that "Defendant was, at the very least, aware of Mr. Hagen's fraud when he accepted Mr. Hobbs'[s] money and was likely a willing participant or co-conspirator in the fraud." (ECF No. 13 at 2.) Elsewhere in his brief, Plaintiff reiterates that "Defendant was likely a knowing participant in the fraud" (*id.* at 11 n.1); that the "facts of the case demonstrate that [Defendant] was likely a knowing co-conspirator in Mr. Hagen's fraud" (*id.* at 14); that "all the information Defendant had at the time he received and accepted Mr. Hobbs'[s] funds pointed to a Ponzi scheme, which is quintessential fraud" (*id.* at

---

[4] In his opposition brief, Plaintiff relies heavily on *Bank of America Corp. v. Gibbons*, 918 A.2d 565 (Md. Ct. Spec. App. 2007). In *Gibbons*, the Court of Special Appeals of Maryland recognized that the wife of an embezzler who was unaware of her husband's misconduct yet nevertheless benefited richly from the embezzled funds could potentially be held liable on an unjust-enrichment theory. Although Mrs. Gibbons's good faith was a "highly relevant factor," that factor, standing alone, did not shield her from liability as a matter of law. *Id.* at 577. Conversely, a "dispositive question" was whether Mrs. Gibbons "paid value for the funds transferred to her" by her embezzler-husband. *Id.* at 573. As the Court of Special Appeals explained,

> [c]ourts often have required an innocent recipient benefitted by third party wrongdoing to establish a change of circumstances that makes it inequitable to order restitution. Thus, when the recipient's change of circumstances was not caused by his or her wrongful conduct, "the primary rule is that if repayment will cause the recipient loss, restitution is barred to the extent that such loss would occur."

*Id.* at 577 (citation omitted). In the end, *Gibbons* is of relatively little use for Plaintiff at this stage, because he has not pleaded sufficient facts from which the Court can plausibly infer whether Defendant (1) gave good and valuable consideration in exchange for the loan proceeds and/or (2) acted in good faith or in collusion with Hagen: "[o]nly speculation can fill the gaps in [his] complaint," *Barnett v. United States*, Civ. No. JKB-16-406, 2016 WL 3570249, at *3 (D. Md. June 30, 2016) (citation omitted).

7

18); and that "[i]t is fair and reasonable to conclude" that Hagen, Defendant, and another individual were "in bed together on this deal" and "likely co-conspirators with respect to the fraudulent schemes" (*id.* at 19). Plaintiff adds that "[d]iscovery is necessary to establish the salient points that Defendant knowingly accepted fraudulently obtained money (or, worse, was a participant or co-conspirator in the fraud himself)." (*Id.* at 8.)

 The problem is that none of these grave allegations appear in the Complaint. To be sure, Plaintiff alludes to fraud: in Count I, he avers that the "monies obtained by Defendant rightfully belong to Plaintiff and were fraudulently obtained" (ECF No. 1 ¶ 26), while in Count II, he states that he conferred a benefit on Defendant "in justifiable and reasonable reliance on the fraudulent representations or [*sic*] Mr. Hagen" (*id.* ¶ 30). Crucially, however, Plaintiff never alleges—*in his Complaint*—that Defendant participated in the fraudulent scheme or was even aware of the scheme. It may be that, when Plaintiff filed his Complaint back in March 2016, his theory of the case was undeveloped; it may also be that the affidavits and exhibits supplied by Defendant in connection with his alternative motion for summary judgment have influenced Plaintiff's evolving theory. In either case, Plaintiff cannot proceed to discovery on restitutionary claims grounded in fraud unless he first pleads plausible factual allegations supporting such claims. *Cf. E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 449 (4th Cir. 2011) ("[S]tatements by counsel that raise new facts constitute matters beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion."). What is more, to the extent Plaintiff intends to proceed on a fraud theory (regardless whether he includes a count specifically labeled "fraud"), he must satisfy the heightened pleading requirements of Rule 9(b), which rule stipulates that in "alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake" (emphasis added). *See also Adams v. NVR Homes,*

*Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000) ("The requirements of Rule 9(b) apply to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud."); *accord Harmon v. BankUnited*, Civ. No. WDQ-08-3456, 2009 WL 3487808, at *2 (D. Md. Oct. 22, 2009); *Frank v. Branch Banking & Tr. Co.*, Civ. No. AMD 05-1292, 2006 WL 4396131, at *2 n.** (D. Md. Jan. 19, 2006), *aff'd*, 191 F. App'x 180 (4th Cir. 2006) (per curiam); *cf. United States ex rel. Elms v. Accenture LLP*, 341 F. App'x 869, 873 (4th Cir. 2009) (per curiam) ("Rule 9(b) is aimed at . . . fishing expeditions: 'The clear intent of Rule 9(b) is to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed.'" (citation omitted)).  In this case, on these facts, a Complaint alleging fraud in a manner that satisfies Rule 9(b) would necessarily include particularized allegations not only concerning Hagen's role in the scheme but also, more importantly, concerning Defendant's role.

To be clear, nothing in the Court's discussion here should be taken to suggest that Plaintiff's *only* path to a plausible restitutionary claim involves allegations of fraud:  it may be that, in spite of the affidavits and other documents produced by Defendant (which the Court has not considered in conducting its analysis but of which Plaintiff is obviously now aware), Plaintiff nevertheless believes he could plausibly allege, in good faith and in keeping with the requirements of Rule 11, that Defendant did not provide legally sufficient consideration in exchange for the $500,000 he received.  As discussed above, lack of consideration might itself warrant (or at least support) a claim for unjust enrichment or money had and received.  The point here simply is that, whatever legal theory Plaintiff intends to advance, he has not supported his restitutionary counts with sufficient, relevant factual allegations in the controlling Complaint—and the Court is duty-bound on a Rule 12(b)(6) motion to evaluate the Complaint as actually drafted by Plaintiff, not to supplement it with language from the briefs or with the Court's own

musings about the case. Accordingly, the Court will DISMISS Counts I–II WITHOUT PREJUDICE.

### B. Count III (Conversion)

While the Court leaves open the possibility that Plaintiff might yet salvage his restitutionary counts, Plaintiff's conversion count is at odds with the facts as alleged and with controlling law and is therefore amenable to dismissal with prejudice.

"Conversion is an intentional tort, consisting of two elements, a physical act combined with a certain state of mind." *Darcars Motors of Silver Spring, Inc. v. Borzym*, 841 A.2d 828, 835 (Md. 2004). The act element can be satisfied through a "distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." *Allied Inv. Corp. v. Jasen*, 731 A.2d 957, 963 (Md. 1999) (citation omitted). As for the intent element, a "wide range of different states of mind qualify. At a minimum, a defendant liable [for] conversion must have 'an intent to exercise a dominion or control over the [property] which is in fact inconsistent with the plaintiff's rights.'" *Borzym*, 841 A.2d at 836 (citation omitted).

The general rule under Maryland law (and the law of many states) is that "monies are intangible and, therefore, not subject to a claim for conversion." *Jasen*, 731 A.2d at 966. Maryland courts do recognize a narrow exception for those circumstances in which the "plaintiff can allege that the defendant converted specific segregated or identifiable funds." *Id.*

> This exception is recognized with funds that have been or should have been segregated for a particular purpose or that have been wrongfully obtained or retained or diverted in an identifiable transaction. Such claims are defeated, however, if a defendant retains possession of the funds and commingles them with other monies, because the money "loses its specific identity and may no longer be the subject of a conversion action."

*Gibbons v. Bank of Am. Corp.*, Civ. No. JFM-08-3511, 2012 WL 94569, at *9 (D. Md. Jan. 11, 2012) (citations omitted).  This commingling limitation is logical given the origins of the conversion tort:  "The tort arose from the common law action of trover . . . .  In its earliest form, the action was used in, and apparently limited to, situations where finders of lost goods refused to return them to the true owners; hence the notion of a 'conversion' of the goods."  *Lawson v. Commonwealth Land Title Ins. Co.*, 518 A.2d 174, 175 (Md. Ct. Spec. App. 1986).  Where unlawfully converted funds are mixed with the tortfeasor's lawful funds, it is not feasible to segregate and restore the plaintiff's currency; nor is it necessary, since money is fungible and since many actions exist at both law and equity to compensate persons who have been deprived of their property.

      Under the conversion count in his Complaint, Plaintiff conclusorily asserts that "Defendant knowingly and intentionally separately retained [$500,000] to the detriment of Plaintiff, the rightful owner."  (ECF No. 1 ¶ 37.)  Plaintiff's use of the adverb "separately" was likely no accident; presumably, Plaintiff's counsel is familiar with the narrow exception to the general bar on conversion claims for money.  But Plaintiff's vague inclusion of that adverb, without factual enhancement, will not spare his conversion claim, as it does not give rise to a plausible inference that Defendant deposited and maintained the loan funds in a distinct, segregated account.  On the contrary, Plaintiff elsewhere recounts that the funds were wired to Defendant's M&T Bank account and that Defendant "used the loan proceeds for his personal use and gain."  (*Id.* ¶¶ 13, 18.)  Taking the Complaint as a whole (and absent factual allegations to the contrary), the Court infers that Defendant commingled the loan proceeds with his personal funds and thereafter spent at least some portion of the commingled funds—defeating Plaintiff's conversion claim.  *See John B. Parsons Home, LLC v. John B. Parsons Found.*, 90 A.3d 534,

547 (Md. Ct. Spec. App. 2014) ("[W]hen funds are co-mingled, the monies lose their 'separateness' and, therefore, are not subject to a claim of conversion."); *see also Sirona Dental Sys., LLC v. Stevenson Grp., Inc.*, Civ. No. CCB-12-1253, 2013 WL 3875325, at *2 (D. Md. July 25, 2013) (It is "established law in Maryland that commingled funds are no longer subject to a conversion claim, even if they had a specific purpose when they were transferred to the defendant."); *cf. Diane Sales, Inc. v. Am. Express Centurion Bank*, Civ. No. GLR-14-1063, 2014 WL 11429026, at *2 (D. Md. July 14, 2014) ("Although [the plaintiff] has identified specific funds it alleges were debited without authorization, it does not allege that [the defendant] has maintained these funds in a segregated account. Without this factual allegation, the Court cannot reasonably infer [that the defendant] is liable for conversion.").

More fundamentally, Plaintiff's conversion claim fails because he has not alleged that he was entitled to—or had any expectation of—restoration of the *particular funds* that he agreed to lend Hagen. Rather, had the transaction been conducted pursuant to their agreement, Hagen would have used those funds to buy out participants in the purported "black ops" investment venture, and Plaintiff thereafter would have been reimbursed through the lucrative profits that Hagen forecast. (*See* ECF No. 1 ¶ 9.) In other words, Plaintiff voluntarily relinquished the $500,000 from his IRA knowing full well he would never see those particular funds again. As such, the general bar on conversion claims for money applies: the conversion tort is simply a poor fit for Plaintiff's case. *See Johnson v. Wheeler*, 492 F. Supp. 2d 492, 510-11 (D. Md. 2007) (dismissing the plaintiffs' conversion claim with prejudice where the plaintiffs were "seeking monetary damages, but not the return of specific funds that [were] being held separate and apart"); *Bahari v. Countrywide Home Loans*, Civ. No. CCB-05-2085, 2005 WL 3505604, at *5 (D. Md. Dec. 16, 2005) (explaining that if the defendant "merely owes a debt of money, which

could be satisfied by check or other currency besides the specific bills that [the plaintiffs] tendered, the [plaintiffs'] cause of action for conversion must fail"); *cf. Borzym*, 841 A.2d at 833 n.3 (suggesting that, unless the defendant dealership was obliged to return specific bills received as the plaintiff's down-payment, it is "doubtful that a claim of conversion was available to [the plaintiff] to recover [such down-payment]").

Plaintiff devotes just two paragraphs of his opposition brief to his defense of his conversion theory, and he cites just one case in support of that theory—*Capital Source Finance, LLC v. Delco Oil, Inc.*, 625 F. Supp. 2d 304 (D. Md. 2007). In that case, the defendant petroleum distributor had pledged its accounts receivable to the plaintiff to secure a revolving line of credit, but the distributor allegedly failed to deposit certain of its collections into the designated account. The plaintiff brought suit alleging, *inter alia*, conversion. In addressing a jurisdictional question without probing the merits of the plaintiff's conversion theory, Judge Chasanow of this District observed that, under Maryland law, "conversion can only apply to currency if the alleged conversion relates to a specific and identifiable fund." *Id.* at 311. Judge Chasanow did not specifically address the issue of commingling. Regardless, *Delco Oil* is readily distinguishable from this case insofar as the plaintiff there was entitled to immediate deposit of the particular receivables that the defendant distributor allegedly diverted. Here, as discussed above, Plaintiff—by his own allegation—relinquished his IRA funds under circumstances in which, had all gone according to plan, he would never have recovered those particular funds but would instead have been reimbursed from an entirely different source.

All of this is not to suggest that Plaintiff suffered no harm: taking his Complaint at face value, he seemingly did. Hagen apparently deceived Plaintiff, and such deception might give rise to claims as against Hagen for breach of contract and/or material misrepresentation. But on

the facts as pleaded here, such deception does *not* give rise to a conversion claim as against Defendant, and for that reason, Count III will be DISMISSED WITH PREJUDICE.

## IV. *Conclusion*

For the foregoing reasons, an Order shall enter GRANTING Defendant's Motion to Dismiss (ECF No. 8); DISMISSING Counts I and II of Plaintiff's Complaint WITHOUT PREJUDICE; DISMISSING Count III of Plaintiff's Complaint WITH PREJUDICE; and CLOSING THIS CASE.

DATED this 28th day of July, 2016.

BY THE COURT:

/s/
James K. Bredar
United States District Judge
