**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| **GARY HOBBS,** | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-16-749 |
| **SEAN ST. MARTIN,** | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Gary Hobbs ("Plaintiff") brought an action against Sean St. Martin ("Defendant") for Money Had and Received (Count I), Unjust Enrichment (Count II), and Conversion (Count III). (Compl., ECF No. 1.) Pursuant to Defendant's motion, the Court dismissed Count III with prejudice, dismissed Counts I and II without prejudice, and ordered the case closed. (Order Granting Mot. to Dismiss, ECF No. 19.) Plaintiff has since moved to reopen the case and for permission to file an amended complaint. (Pl.'s Mot. to Reopen, ECF No. 20.) In response, Defendant has moved for sanctions against Plaintiff. (Def.'s Mot. for Sanctions, ECF No. 23.) Both motions have been fully briefed (ECF Nos. 21, 22, 24, 26), and no hearing is required, *see* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, the Court will vacate its previous order to dismiss the case,[1] grant Plaintiff's motion to file an Amended Complaint, and deny Defendant's motion for sanctions.

---

[1] In vacating its previous judgment closing the case, the Court will not vacate the rulings contained in the same order in which it dismissed Count III of Plaintiff's original Complaint with prejudice and dismissed Counts I and II without prejudice. (*See* Order Granting Mot. to Dismiss.)

**I.     Standard to File an Amended Complaint After a Final Judgment**

In order to grant a motion to amend a complaint in a case in which it previously entered a final judgment, a court must first vacate said judgment according to Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure.  *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006). However, in such a case, the district court need not focus on the legal standards applicable to those rules, but "need only ask whether the amendment should be granted, just as it would on a prejudgment motion to amend pursuant to Fed. R. Civ. P. 15(a)."  *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011).  Accordingly, a party may amend its complaint only if doing so avoids "prejudice, bad faith, [and] futility."  *Id.*  "Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards."  *Id.*

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  An inference of a mere possibility of misconduct is not sufficient to support a plausible claim.  *Id.* at 679.  As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level."  550 U.S. at 555.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).  Although when considering a motion to

dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

## II.  *Allegations of the Amended Complaint*

The facts leading to this action began in 2003 when Richard Hagen, a nonparty, allegedly first solicited funds from Plaintiff to invest in companies providing support for clandestine intelligence operations on behalf of the United States Government.  (Am. Compl ¶¶ 5–6, ECF No. 20-3.)  Plaintiff believed Hagen's investment opportunity to be legitimate and, consequently, invested $500,000 with Hagen.

Defendant works in the defense intelligence community and is a member of Stag Mountain, LLC, a corporation of which Hagen was also a member.  (*Id.* at ¶ 9.)  On May 15, 2014, Defendant, in his capacity as managing member, approved Hagen's request that Stag Mountain extend him a short-term loan in the amount of $500,000.  (Demand Note, ECF No. 21-1.)[2]  Defendant and Hagen executed a note indicating that Hagen would identify a destination for those funds, that the (unnamed) recipient would render repayment, and that Hagen would be personally liable should the recipient fail to repay the full value by May 25, 2014.  (*Id.*)  According to the Amended Complaint, the purpose of this loan was to allow Hagen to repay Bret Anderson, an investor in Hagen's fund.  (Am. Compl. at ¶ 15.)  Plaintiff further alleges that Defendant approved this loan in spite of knowing that Hagen (1) was in a distressed financial condition, (2) had difficulty maintaining his financial obligations to Stag Mountain, and (3) had defrauded others by soliciting their investment in a Ponzi scheme.  (*Id.* at ¶¶ 13–16.)

---

[2] The Amended Complaint alludes to the note memorializing this loan (*id.* at ¶¶ 15–16), and Defendant has introduced the note into the record (Demand Note).  Accordingly, the Court may consider the note even under a motion to dismiss standard because it is referenced by and integral to the Amended Complaint, *see Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

In June of 2014, Hagen purportedly requested an additional $500,000 from Plaintiff as a short-term loan in order to buy out other investors in Hagen's venture. (*Id.* at ¶ 18.) Plaintiff agreed and instructed the broker for his IRA account to transmit the funds according to Hagen's directions. (*Id.* at ¶¶ 19–21.) On June 5, 2014, instead of using Plaintiff's money to buy out investors, Hagen directed Plaintiff's broker to wire the money directly to Defendant's account. (*Id.* at ¶ 21.) Later, having learned that Hagen had been sued for fraud, Plaintiff demanded the return of his initial investment as well as the $500,000 in loan proceeds, but Hagen failed to comply.[3] (*Id.* at ¶ 26.) Defendant does not deny he accepted the wire transfer, but he has refused Plaintiff's demands that the money be returned. (*Id.* at ¶ 27.)

Plaintiff alleges that Defendant retains the contested funds despite having paid no consideration for them and in spite of having reason to believe that he received them only through Hagen's fraudulent actions. (*Id.* at ¶¶ 32, 33, 42, 43.)

## III. Analysis

Plaintiff brings claims for unjust enrichment and for money had and received. (Am. Compl. ¶¶ 29, 38.) A claim for unjust enrichment requires the plaintiff to establish three elements: (1) the plaintiff conferred a benefit upon the defendant; (2) the defendant knew of or appreciated the benefit; and (3) the defendant accepted or retained the benefit under such circumstances that it would be inequitable to allow the defendant to retain the benefit without paying value in return. *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007). An action for money had and received "lies whenever the defendant has obtained possession of money which, in equity and good conscience, he ought not to be allowed to retain," and may apply "where the defendant receives the money as a result of a mistake of law or fact and did not

---

[3] Pursuant to findings of liability in multiple civil lawsuits, judgements were eventually entered against Hagen for approximately $14 million. (Am. Compl. ¶ 25.)

have a right to it." *Benson v. State*, 887 A.2d 525, 547 (Md. 2005) (internal citations omitted). Thus, as the Court stated previously in this case, the two relevant causes of action require a common analysis of equitable considerations, and "to recover under either theory, the plaintiff must demonstrate that the defendant received a benefit which equity requires the defendant to relinquish." (Mem. Op. on Mot. to Dismiss 4–5, ECF No. 18 (citing *Jennings v. Rapid Response Delivery, Inc.*, Civ. No. WDQ-11-0092, 2011 WL 2470483, at *6 (D. Md. June 16, 2011)).)

The Court also proposed two ways in which Plaintiff might establish that equity lies in his favor: (A) by showing that Defendant knew the money he received from Plaintiff was a result of Hagen's fraudulent activity or (B) by showing that Defendant did not pay sufficient consideration in exchange for the money he received from Plaintiff. (*Id.* at 7, 9.) Plaintiff has adequately integrated both theories into his proposed Amended Complaint (Mem. in Supp. of Pl.'s Mot. to Reopen 5–6), and the Court will grant Plaintiff's motion to reopen the case.

### A. *Plaintiff's "Bad Faith" Theory of Inequity*

Plaintiff's first theory by which to show retention of the $500,000 by Defendant would be inequitable is through his allegations that Defendant knew Hagen was involved in fraudulent activity and knew that the money deposited in Defendant's account was the result of such activity. (*Id.*; Am. Compl. ¶¶ 13–16, 32, 42.) Because the Amended Complaint makes out a non-futile claim for relief on this theory, the Court will reopen the case.

In his opposition to Plaintiff's motion, Defendant mistakenly argues that the complaint must satisfy the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure, which requires that a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) ("[T]he 'circumstances'

required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."). Despite Defendant's insistence that Plaintiff is pursuing a fraud theory against Defendant (Def.'s Opp'n 3), the Court concludes that is not the nature of the complaint. Although Hagen's fraud is part of the backdrop for Plaintiff's allegations against Defendant, Plaintiff is not alleging Defendant committed fraud and, consequently, does not need to satisfy the dictates of Rule 9(b). Instead, Plaintiff is pursuing theories of unjust enrichment and money had and received, standard tort theories that need only conform to Rule 8(a), as interpreted by *Iqbal* and *Twombly*.

Plaintiff's allegations in his proposed amended complaint that Defendant knew about Hagen's fraudulent activity and knew the money deposited into Defendant's account stemmed from that fraudulent activity are sufficiently pled. The allegations of Defendant's knowledge are consistent with the plausible factual allegations otherwise supporting Plaintiff's tort theories of recovery. These allegations include the averment that Defendant was a co-member with Hagen in a small LLC for which Hagen was Chief Operating Officer and on behalf of which Hagen solicited investments. (Am. Compl. ¶ 9.) The complaint further alleges Defendant, who was the managing member of the LLC, worked together with Hagen regularly, socialized with Hagen occasionally, and at one time discussed personal finances with Hagen's wife.[4] (*Id.* at ¶¶ 10–12, 15.) In addition, Plaintiff alleges Defendant was aware of Hagen's difficulty in paying his share of investments in Stag Mountain necessary to maintain his membership, was aware of Hagen's repeated need of large loans to repay third persons, and was aware Hagen was in a severely

---

[4] The Court notes that the alleged meeting between Defendant and Hagen's wife took place approximately six years prior to the transactions underlying the Amended Complaint (*see id.* at ¶ 11), thus allowing a somewhat limited inference of familiarity on the part of Defendant in 2014.

distressed financial condition. (*Id.* at ¶ 13.) Plaintiff also alleges that Hagen was guilty of defrauding numerous investors, including Plaintiff. (*Id.* at ¶¶ 14, 24, 25.)

These allegations allow a sufficient inference of bad faith by Defendant in retaining Plaintiff's money. Accordingly, Plaintiff's motion to re-open will be granted and Plaintiff may proceed on his theory that Defendant knew of Hagen's allegedly fraudulent activity.

### B. *Plaintiff's "Lack of Consideration" Theory of Inequity*

Plaintiff's second theory explaining why it would be inequitable for Defendant to retain the $500,000 in question is that Defendant provided no consideration in exchange for that money. (Pl.'s Mot. to Reopen 6; Am. Compl. ¶¶ 22, 33, 43.) Because Plaintiff can conceivably build a non-futile case on his allegation that no consideration was paid, he may proceed on this theory as well.

In an action for unjust enrichment, it does not matter how the defendant came into possession of the property in question "if, in equity and good conscience, he is not entitled to hold it against the true owner." *Plitt v. Greenberg*, 219 A.2d 237, 241 (Md. 1966) (internal quotation marks omitted). "However, if a transferee came into possession of a plaintiff's money in good faith after paying a good and valuable consideration for it, then the plaintiff could not prevail and recover back the funds in that transferee's possession." *Id.*

Plaintiff alleges that neither Plaintiff nor Hagen received consideration from Defendant that would justify Defendant's retention of the proceeds transferred from Plaintiff's account. (Am. Compl. ¶¶ 33, 43.) Plaintiff assumes (notably, without citing law in support) that in order for Defendant to equitably retain the money transferred from Plaintiff, Defendant would have had to pay consideration either to Plaintiff or to Hagen. (Mem. in Supp. of Pl.'s Mot. to Reopen 5–6, ECF No. 20-1; Pl.'s Opp'n to Def.'s Mot. for Sanctions 12–13, ECF No. 24.) However, if

Defendant had been the creditor in the $500,000 loan memorialized in the demand note, then his serving as the lender to Hagen may arguably have represented acceptable consideration to justify his retention of the $500,000 transferred from Plaintiff. Importantly, though, as Defendant apparently admits, *Stag Mountain extended that loan*, and Defendant was not a party to the transaction nor did he pay any consideration in relation thereto. (Def.'s Opp'n to Pl.'s Mot. to Reopen 15, ECF No. 21; Demand Note.)

Plaintiff makes a non-futile argument that Defendant did not pay consideration sufficient to warrant his retention of the funds wired into his account. It is conceivable (though by no means certain) that upon review of the circumstances surrounding any consideration paid by Defendant, equity might demand a return of some portion or all of the money transferred from Plaintiff's account. Accordingly, Plaintiff will be permitted to pursue his case on his "lack of consideration" theory as well as his "bad faith" theory for why equity demands that Defendant return some portion or all of the $500,000 allegedly transferred from Plaintiff's account.

### C. *Defendant's Motion for Sanctions*

Defendant has moved the Court to sanction Plaintiff for failing to pursue a sufficient factual investigation prior to filing his proposed Amended Complaint and for ignoring evidence favorable to the Defendant. (Def.'s Mot. for Sanctions 1.) In response, Plaintiff requests that, after ruling in Plaintiff's favor, the Court require Defendant to pay the costs Plaintiff incurred in opposing Defendant's motion. (Pl.'s Opp'n to Def.'s Mot. for Sanctions 25.) The Court will grant neither request.

By filing a pleading in a district court, an attorney represents, among other things, that "the factual contentions have evidentiary support" or that "the denials of factual contentions are warranted on the evidence." Fed. R. Civ. P. 11(b). A court may impose sanctions on a party it

finds to have violated this rule. Fed. R. Civ. P. 11(c). Rule 11 requires an attorney to conduct a reasonable pre-filing investigation into the factual and legal bases of a claim. *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991). It further requires that a party may only file a motion for sanctions after it has served notice on the opposing party and offered that party at least twenty-one days to rectify the challenged conduct. Fed. R. Civ. P. 11(c). Upon deciding a motion pursuant to Rule 11, the court may award the prevailing party reasonable expenses incurred in litigating the motion. *Id.* "[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus . . . streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393 (1990).

Defendant alleges that Plaintiff knowingly mischaracterized the terms of the note memorializing Stag Mountain's May 2014 loan to Hagen. (Def.'s Mot. for Sanctions 6–7.) The Amended Complaint alleges that Hagen needed the loan in order to repay Bret Anderson and that Defendant executed the loan despite knowing Hagen would be unable to legitimately repay it. (Am. Compl. ¶ 15.) While Plaintiff does not include the details that the note contemplated that the unnamed "recipient of the funds" would repay the loan, that Hagen was liable to repay it in the event the unnamed recipient did not pay it, and that repayment was to be rendered to Stag Mountain, nothing in the Amended Complaint contradicts the terms of the note. (*Compare id. with* Demand Note.) Furthermore, Plaintiff's description is consistent with a characterization Defendant made previously in this case. (Aff. of Def. ¶ 4, ECF No. 9-1 ("Per the Note, Hagen was obligated to repay the Funds within ten (10) days from the date of the Note.").)[5] Therefore, Plaintiff's description of the note does not merit sanctions.

---

[5] Defendant tries to characterize Hagen as merely a guarantor of the loan (Def.'s Mot. for Sanctions 6), but the note itself expressly states that the loan is made by Stag Mountain LLC to Hagen. Only Defendant and Hagen signed the note. Thus, it is clear that Hagen was the borrower, not simply a guarantor. It is Defendant's characterization that is in error.

Defendant further alleges sanctions are appropriate because Plaintiff ignored accounting records provided by Defendant, which purport to document consideration paid by Defendant that would justify his retention of the money transferred to his account. (Reply in Supp. of Def.'s Mot. for Sanctions ¶ 26, ECF No. 26.) Defendant claims that he (and another unnamed entity) paid consideration in the form of various extensions of credit to Stag Mountain, that Stag Mountain paid consideration in the form of a loan to the unnamed recipient referred to in the demand note for which Hagen was guarantor, and that this chain of consideration justified dividing the money transferred from Plaintiff among Defendant ($289,000), Stag Mountain ($141,000), and Stag Mountain's anonymous creditor ($70,000). (*Id.*)  Setting aside for the moment the question of whether Defendant provided Plaintiff with adequate time to review these records (*see* Pl.'s Opp'n to Def.'s Mot. for Sanctions 27), Plaintiff should not be faulted for proceeding in the face of Defendant's proffered evidence. First of all, the connection between the transfer of $500,000 from Plaintiff to Defendant and the numerous loans Defendant claims to have made to Stag Mountain (totaling $289,000 over the course of six and-a-half years) is sufficiently attenuated that an equitable determination in Plaintiff's favor is conceivable. (*See* Transaction Statement, ECF No. 24-7.) Second, one cannot blame Plaintiff for expressing skepticism over the evidentiary value of the generic and sparse accounting records provided to him by Defendant. (*See id.*) Thus, the claim is not futile.

Accordingly, the Court does not find Plaintiff to have engaged in sanctionable conduct. Much to the contrary, the Court is disturbed by Plaintiff's description (along with supporting evidence) of Defendant's conduct prior to filing his motion for Sanctions. (*See* Pl.'s Opp'n to Def.'s Mot. for Sanctions 25–29.) Plaintiff was apparently served with a copy of Defendant's motion for sanctions twenty-one days before Defendant filed it, as required by Rule 11(c)(2).

(Def.'s E-mail of Oct. 13, 2016, ECF No. 24-1.)  However, Plaintiff explains (and Defendant does not contest) that after Plaintiff communicated to defense counsel his disagreement with the proposed motion, Defendant made substantive revisions to the motion and added documentary support for his position, all without offering Plaintiff a meaningful opportunity to change his position in response.  (Def.'s E-mail of Nov 4, 2016, ECF No. 24-3; Pl.'s Opp'n to Def.'s Mot. for Sanctions 27.)  Furthermore, Defendant's revised motion faulted Plaintiff for proceeding in the face of information that Defendant apparently only made available six minutes before filing. (*See id.* Def.'s Mot. for Sanctions 10 n.2.)  In so doing, Defendant dishonored the purpose of the twenty-one-day "safe harbor" period, which exists to "provide immunity from sanctions to those litigants who self-regulate by withdrawing potentially offending filings or contentions," *Rector v. Approved Fed. Sav. Bank*, 265 F.3d 248, 251 (4th Cir. 2001) (citing Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendments)).  While the Court is not prepared to sanction Defendant at this time, similar instances of trigger-happy filings are likely to draw sanctions in the future.

### IV.  Conclusion

For the foregoing reasons, a separate order will issue in which the Court will (1) grant Plaintiff's motion to reopen the case and amend his complaint; (2) order that the Proposed Amended Complaint be docketed as the Amended Complaint; (3) deny Defendant's motion for sanctions; and (4) deny Plaintiff's request to impose legal fees.

DATED this 11th day of January, 2017.

BY THE COURT:

/s/
James K. Bredar
United States District Judge